FILED

2008 Jun-24  PM 01:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **BARRY W. CURTIS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:07-CV-0370-KOB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The Claimant, Barry W. Curtis, filed applications for Disability Insurance Benefits on April 27, 2005, alleging disability commencing on February 7, 2005 caused by hearing loss, right hand problems, and right knee problems.  The Commissioner denied the claims initially, and the Claimant filed an untimely request for hearing; however, the Claimant established good cause for the late filing and the ALJ held a hearing on January 12, 2006.  In a decision dated February 7, 2006, the ALJ found the Claimant not disabled within the meaning of the Social Security Act, and, therefore, not eligible for Disability Insurance Benefits.  On December 28, 2006, the Appeals Council denied the Claimant's request for review.  The Claimant exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3).  For the reasons stated below, this court will AFFIRM the decision of the Commissioner.

## II. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person cannot

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected
> to result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation

process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. pt. 404, subtpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the
> economy?
>
> An affirmative answer to any of the above questions leads either to
> the next question, or, on steps three and five, to a finding of disability.
> A negative answer to any question, other than step three, leads to a
> determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

416.920.

## III.  Standard of Review

The standard of reviewing the Commissioner's decision is limited.  This court must affirm

the Commissioner's decision if the Commissioner applied the correct legal standards and if his

factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*,

129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  "No...

presumption of validity attached to the [Commissioner's] legal conclusions, including determination

of the proper standards to be applied in evaluating claims."  *Walker*, 826 F.2d at 999.  This court

does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. Facts

The Claimant was fifty-four years old at the time of the administrative hearing and has a college level education. (R. 195). His past work experience includes employment as a police officer and a police lieutenant. (R. 54). According to the Claimant, he became disabled on February 7, 2005, due to hearing loss, right hand problems, and right knee problems. (R. 18, 194-209). The Claimant is currently unemployed. (R. 42, 186).

Dr. David Hollis, the Claimant's general practitioner, diagnosed him with diverticulosis, gastroesophageal reflux disorder, hypertension, pain in joint of lower leg, and sensorineural hearing loss, as of October 28, 2004. (R. 92). On January 5, 2005, Dr. Hollis saw the Claimant regarding conduction hearing loss and subsequently referred Claimant to Dr. Jason Lockette, an ear, nose and throat specialist. (R. 127).

On January 12, 2005, Dr. Lockette evaluated the Claimant's hearing loss. (R. 158). Dr. Lockette conducted an audiogram on Claimant and reported hearing loss consistent with age and/or noise exposure. (R. 138). He saw the Claimant again on January 19, 2005, and his

diagnosis was sensorineural hearing loss. (R. 157). The record contains Dr. Lockette's undated, handwritten letter that stated that the Claimant's sensorineural hearing loss impairs his ability to hear and respond to radio calls and suggested that Claimant should "not be in a job that requires responding to radio calls." (R. 159). On May 23, 2005, Dr. Lockette wrote another letter in which he stated the Claimant's testing results showed high frequency bilateral sensorineural hearing loss consistent with either advancing age, noise exposure, or a combination of both. (R. 137). He also stated the Claimant's hearing loss is mild to moderate and recommended a hearing aid. (R. 137).

On July 13, 2005, Dr. John Murphy, an orthopedic surgeon, saw the Claimant for pain in his knee and right wrist. (R. 184). Dr. Murphy had previously treated the Claimant in 1996 for a torn medial meniscus of the right knee. (R. 180). In 2000, Dr. Murphy treated the Claimant for a lacerated flexor carpi ulnarisu and open fracture of the distal ulna. (R. 172). In 2002, the Claimant received treatment for possible early degenerative arthritis. (R. 164). In 2003, the Claimant saw Dr. Murphy for left knee pain at which time the diagnosis was anterior knee pain with possible degenerative arthritis. (R. 162).

On the July 13, 2005, visit, the Claimant had x-rays taken that showed degenerative arthritis of his knees and his wrist was "grossly normal" with "minimal" degenerative changes. (R. 184). The Claimant's diagnosis at this visit was chronic pain in the right wrist with synovitis and possible early degenerative arthritis, along with degenerative arthritis of the knee. (R. 184). Dr. Murphy completed a medical source opinion form that included a month and day but no year, in which he opined that the Claimant would need to lie down as often as needed for 15-30 minutes at a time, or at least be able to prop his right lower extremity to reduce knee swelling. (R. 181). The form stated that the Claimant has no limitations in sitting and "pain tolerance" in

standing and/or walking.  (R. 181).  Dr. Murphy further opined in this form that the Claimant should never climb, balance, stoop, kneel, crouch, or crawl and should never work around high, exposed places or vibration.  (R. 181-182).  This form also suggested the Claimant could lift and/or carry five to ten pounds occasionally.  (R. 181).

In evaluating Claimant's social security claim, the ALJ noted that the Claimant was not performing substantial gainful work.  (R. 18).  The ALJ found that the Claimant has bilateral sensorineural hearing loss, which constitutes a "severe" impairment under the Social Security Act and Regulations.  (R. 20).  However, the ALJ determined that this severe impairment did not meet or medically equal, either singly or in combination, one of the listed impairments set forth in the Listing of Impairments.  (R. 20).  In addition, the ALJ did not list the Claimant's arthritis as an impairment because of the inconsistencies found in Dr. Murphy's medical records, but still considered the Claimant's limitations from arthritis in determining RFC and jobs the Claimant could perform.  (R. 21).

In assessing the Claimant's residual functioning capacity, the ALJ stated that the medical records failed to document a sufficient objective basis for accepting the Claimant's allegations of pain.  The ALJ stated that he considered the Eleventh Circuit's standard for assessing subjective complaints of pain.  (R. 20).  The pain standard requires (1) evidence of an underlying medical condition, and (2) *either*: (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  Regarding Claimant's hearing loss and arthritis complaints, the ALJ found that the Claimant met the first part of the standard – evidence of an underlying medical condition – but failed to meet the second part.  (R. 21).

5

The ALJ found the Claimant's allegations of inability to perform all work activity to be only minimally credible.  (R. 21).  Claimant's sensorineural hearing loss would only preclude him from work activity that would involve responding to radio calls.  (R. 21).  Regarding the knee pain, the ALJ concluded that Dr. Murphy only officially restricted the Claimant to avoid activities with steps and bent knee postures.  (R. 21).  The ALJ noted that the wrist injury would not preclude the Claimant from work activity because the physician placed no restrictions or limitations on the continued use of the right hand.  (R. 21).  The ALJ finally noted that the injuries to the Claimant's right wrist and the pain in both knees occurred up to five years prior to the disability application, and, in fact, the Claimant worked subsequent to his injuries until he filed for disability in early 2005.  (R. 21).

The ALJ relied on Dr. Murphy's medical analysis for the knee and wrist pains and a Residual Functional Capacity Assessment ("RFCA") completed on June 16, 2005 for the bilateral sensorineural hearing loss.  (R. 139).  David Williamson was the medical consultant who completed the RFCA for the hearing loss.  (R. 146). An RFCA was not available for the knee and joint pains because this evidence was offered into the record during the hearing.  Based on the RFCA and Dr. Murphy's opinion, the ALJ concluded that the Claimant had the residual functional capacity to perform medium work activity with no work at heights or around hazardous machinery; no climbing of ropes, ladders, or scaffolds; no exposure to concentrations of noise and retention of no greater than 94% speech discrimination.  (R. 22).  Relying on his findings of the Claimant's residual functional capacity, the ALJ concluded that the Claimant would be unable to return to his past relevant work due to his hearing loss and the inability to perform a job requiring him to respond to radio calls.  (R. 22).

The ALJ gave Dr. Murphy's medical source opinion to the Vocational Expert ("VE") to

review.  (R. 210).  The VE determined that the physical assessment limited the Claimant to both

the postural and strength demands of sedentary work.  (R. 210).  The ALJ posed a hypothetical

based on the medical source opinion that specified that the Claimant would need to lie down

frequently throughout the day and/or at least prop his right lower extremity.  (R. 210).  The VE

stated that if the Claimant needed to lie down frequently or prop his leg up, then either

requirement would preclude the Claimant from all gainful employment.  (R. 211).  The ALJ

acknowledged the VE's statement based in part on Dr. Murphy's ambiguously dated medical

source opinion, but requested the additional support from Dr. Murphy.  (R. 211).

　　　The ALJ further posed two hypothetical situations to the VE.  (R. 211).  The first

hypothetical asked the VE for a listing of light jobs available to a person with the Claimant's age,

education and past relevant work experience, with the following restrictions: no work around

hazardous moving machinery; no work at heights; no work requiring climbing of ropes, ladders,

and scaffolding; no work involving exposure to extreme noise or requiring him to respond to

radio calls due to hearing loss.  (R. 211).  The VE testified that based on the hypothetical, the

Claimant would be able to perform work as a packing line worker, hardware assembler, inspector

and packer, which are jobs that exist in significant numbers in the national economy.  (R. 212).

The ALJ further inquired into the effectiveness of the job if this particular individual was right

hand dominant and had difficulty reaching, handling, grasping, and fingering such that he would

only be able to do these activities on an occasional basis.  (R. 213).  The VE responded that if the

job limited the individual to no greater than occasional use of the dominant upper extremity, that

limitation would preclude these examples and any other unskilled work.  (R. 213).

　　　The second hypothetical situation posed by the ALJ involved the same initial situation

originally presented to the VE but replaced the light jobs with medium jobs.  (R. 213).  The VE

7

listed a wide range of medium exertional level work that a worker could perform based on the initial restrictions, such as hand packager, box maker, and machine packager, each of which are jobs that exist in significant numbers in the national economy.  (R. 213).  The ALJ then added the restriction of the use of the dominant hand as posed in the first hypothetical situation.  (R. 214).  The VE replied that if a work restriction required no greater than occasional use of the dominant upper extremity, then this restriction would preclude the individual from medium level work.  (R. 214).

The supporting documentation to Dr. Murphy's opinion, received after the hearing but dated July 13, 2005, restricted Claimant from performing work activities that involved steps or bent knee postures. In this document, Dr. Murphy neither clarified the date of the original medical source opinion nor reiterated the need to lie down frequently throughout the day.  (R. 184).  The ALJ received the supplemental documentation to Dr. Murphy's medical source opinion and found the Claimant was not disabled.

## V. Issues Presented

In this appeal, the Claimant argues that the Commissioner erred in three ways.  First, the Claimant alleges that the ALJ failed to properly consider the opinion of the Claimant's treating physician.  Second, the Claimant alleges that the ALJ failed to properly apply the Eleventh Circuit's three part pain standard.  Third, the Claimant alleges that the ALJ's assessed residual functional capacity is baseless.

## VI. Discussion

### A. Weight Given to Claimant's Treating Physician

The Claimant alleged that the ALJ failed to properly consider the opinion of Claimant's treating physician.  Although the Claimant listed more than one doctor as a treating physician,

the ALJ's decision relied upon Dr. Murphy's opinion that lists restrictions for Claimant's wrist and knee pains. Given the significance of Dr. Murphy's opinion, the Claimant argued that the ALJ improperly gave insufficient weight to Claimant's treating physician, Dr. Murphy.

Well-established Eleventh Circuit law states that the Commissioner must accord the opinions of the treating physician substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Absent a showing of good cause to the contrary, the Commissioner cannot discount the treating physician's opinions. *Id*. An ALJ's failure to give considerable weight to the treating physician's opinion or adequately explain the good cause to do so, is reversible error. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

The Federal Regulations define a "treating physician" as one with which the claimant has an "ongoing treatment relationship" or someone the claimant "sees or has seen with frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical conditions." 20 C.F.R. § 404.1502. If the ALJ decides to discount the opinion of the treating physician, he must "clearly articulate" his reasons for doing so. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ must make clear the weight accorded to each item of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1170 (N.D. Ala. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

In the instant case, Dr. Murphy unquestionably qualifies as a treating physician; he provided medical care for the Claimant over a nine-year period. Consequently, the ALJ must

accept his opinion absent a showing of good cause to the contrary. At the hearing, the ALJ did address Dr. Murphy's medical source opinion and used that opinion to construct hypotheticals to the VE. He even acknowledged that if the source opinion represented Dr. Murphy's most recent evaluation of the Claimant, then – given the VE's findings – that opinion would affect his disability ruling. However, the ALJ correctly pointed out that Dr. Murphy's medical source opinion included a month and day, but no year so as to raise a question as to its accuracy. Accordingly, the ALJ advised Claimant that he must submit additional documentation from Dr. Murphy to support the findings stated in the source opinion.

Subsequent to the hearing, Claimant did submit additional documentation, an Encounter Summary, from Dr. Murphy dated July 13, 2005 that the ALJ accepted and referred to in his opinion. The summary neither provided a date for the original source opinion used during the hearing nor reiterated restrictions in that source opinion requiring Claimant to lie down frequently throughout the day. The summary did, however, confirm that as of July 13, 2005 – five months after the alleged onset of Claimant's disability – Claimant was restricted from activities involving bent knee postures. This supplemental documentation thus contradicted the earlier medical source opinion, which, if accurate, would have resulted in classifying Claimant as disabled.

In fact, the supplemental documentation only officially limited the Claimant from avoiding steps and bent knee postures. Accordingly, the ALJ properly assigned "non-significant weight" to Dr. Murphy's initial medical source opinion and properly found that the evidence of record does not support the allegation that the Claimant is unable to perform all work activity due to degenerative arthritis of the knees. Consequently, the ALJ properly determined that, due to inconsistencies in the medical records, Dr. Murphy's earlier opinion should be given non-

significant weight in view of the supplemental evidence that failed to support a finding of disabled.

**B. Application of the Eleventh Circuit's Three Part Pain Standard**

The Claimant alleged that the ALJ did not properly apply the three-part pain standard set out by the Eleventh Circuit.  The Claimant argued that his testimony and the medical evidence of his hearing loss, right hand problems, and right knee problems was sufficient proof that Claimant met the three-part pain standard.  The record includes x-ray evidence from Dr. Murphy that the Claimant used to bolster his argument for degenerative arthritis of the knee and wrist.

Courts in this circuit must apply a three-part "pain standard" in evaluating claims of disabling pain or other subjective symptoms.  The pain standard requires (1) evidence of an underlying medical condition, and (2) *either*: (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  This standard also applies to complaints of subjective conditions other than pain.  *See Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991).

Although this standard requires objective medical evidence of a condition that could reasonably cause the alleged symptoms, objective proof of pain itself, or of its intensity, is unnecessary.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  "Subjective pain testimony which is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which claimant complains is *itself* sufficient to sustain a finding of disability."  *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  If nonexertional impairments exist, the ALJ must introduce independent evidence, preferably through vocational

11

expert's testimony, of existence of jobs in the national economy that claimant can perform.  *See*

*Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

If the ALJ discredits a claimant's testimony of pain, he must do so expressly and

articulate explicit and adequate reasons for doing so; substantial evidence must support the ALJ's

articulated reasons.  *Hale*, 831 F.2d at 1011-12.  In deciding issues of credibility, the ALJ

considers objective medical evidence and information from the claimant and treating or

examining physicians, the claimant's daily activities, the frequency and intensity of pain, any

precipitating and aggravating factors, medication and any side effects, and any other measures

taken to alleviate the pain.  *See* 20 C.F.R. §§ 404.1529(c)(2), (3); 416.929(c)(2), (3); Soc. Sec.

Ruling 96-7p.

In this case, the ALJ found that the Claimant met part one of the standard, but failed to

meet either part of the second prong.  The ALJ properly noted that the objective evidence does

not confirm either the severity of the Claimant's alleged symptoms arising from his medically

documented conditions or that those conditions could reasonably be expected to give rise to the

symptoms alleged by the Claimant.  Furthermore, the ALJ's decision is consistent with the

limited objective medical evidence compared with the Claimant's subjective complaints and

testimony.

In considering the Claimant's allegations that knee problems limit his ability to perform

work, the ALJ referred to the documentation provided by Dr. Murphy.  The only form that would

objectively find the Claimant disabled would be Dr. Murphy's medical source opinion.  As stated

earlier, the medical source opinion was viewed by the ALJ, but was not properly amended with

subsequent documentation that the ALJ requested during the hearing.  In fact, the subsequent

documentation stated that the Claimant should avoid activities with steps and bent knee postures,

but did not reiterate the disabling conditions from the medical source opinion.  Therefore, the record does not accurately reflect a proper medical restriction or limitation that either confirms the level of severity or can be reasonably expected to give rise to the alleged pain required by the pain standard.

The Claimant's testimony regarding his right wrist injury also lacks support in Dr. Murphy's medical records.  The x-ray of Claimant's wrist in July 2005 showed that the Claimant's wrist was "grossly normal" with only "minimal" degenerative changes.  Dr. Murphy added that "with respect to [the Claimant's] wrist, he would be treated conservatively."  Lastly, the form contains no restrictions or limitations placed on the Claimant caused by his right wrist injury.  Therefore, the ALJ properly found that the Claimant's wrist injury does not reasonably give rise to the severity of the Claimant's condition or his alleged pain.

In regard to the Claimant's hearing loss, the ALJ properly discredited the Claimant's allegations of inability to perform any work due to his hearing loss.  The record reflects that the Claimant suffers from bilateral sensorineural hearing loss, but testing confirmed the hearing impairment to be only mild to moderate in severity.  In fact, the only restrictions placed on the Claimant caused by hearing loss consisted of preclusion from jobs that require responding to radio calls.  Furthermore, the Claimant's hearing loss was treated with hearing aids.  Consequently, the ALJ found that the Claimant's hearing loss was neither severe nor could reasonably give rise to the alleged pain because Claimant's hearing loss was properly treated with hearing aids.

For the reasons stated above, the ALJ properly applied the Eleventh Circuit's three-part pain standard.  The Claimant's knee pain precludes him from steps and bent knee postures, his hearing loss precludes him from responding to radio calls, and his wrist injury does not preclude

13

him from any job.  Consequently, the Claimant's subjective complaints of pain were not supported by objective medical evidence that would confirm the severity of his pain or reasonably give rise to his pain

## C. The Development of the Residual Functional Capacity

The Claimant alleged that the ALJ's assessed residual functional capacity was baseless. Without Dr. Murphy's assessment, the Claimant argued that nothing in the record existed for the ALJ to base his conclusions as to Claimant's residual functional capacity.  Consequently, the Claimant alleged that the record does not support a residual functional capacity for medium work.

As in all Social Security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The claimant has the burden to provide the relevant medical and other evidence that will prove he suffers from disabling physical or mental functional limitations.  20 C.F.R. § 416.912(c).  After the claimant provides relevant medical evidence, the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert."  *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

In the instant case, the ALJ's assessed residual functional capacity was proper.  The Claimant's initial application for disability only listed the medically determinable impairment of hearing loss.   At the time of application, the Claimant filled out a functional abilities and activities questionnaire, in which he stated that the only limitation that affects his daily activities

14

was his hearing loss problems.  In fact, the Claimant mentions that he has no problems standing, sitting, or walking.  Furthermore, the Claimant never mentioned problems with pain in the wrist nor in the knees.

Based on the Claimant's application and functional abilities questionnaire, the ALJ found that the Claimant had the RFC of medium level work.  The ALJ did not receive Dr. Murphy's medical records concerning the knee and wrist issues until the hearing.  The ALJ properly used all the evidence that was before him, including the late submitted records, to determine Claimant's RFC.  Furthermore, the ALJ used Dr. Murphy's source opinion during the hearing to construct hypotheticals to the VE to establish any functional limitations Claimant's injuries could pose on his future work capabilities.  He then sought clarification from Dr. Murphy and used the supplemental documentation in his final determination.

During the hearing, the ALJ properly addressed the Claimant's wrist and knee injury complaints, even without adequate documentation from Dr. Murphy.  The ALJ posed a hypothetical to the VE inquiring into the Claimant's need to lie down or prop his leg frequently throughout the day.  The VE testified that based on Dr. Murphy's medical source opinion, the Claimant would be precluded from all gainful employment.  After the VE's testimony, the ALJ requested that the Claimant send further documentation from Dr. Murphy to support his source opinion.  After the hearing, the ALJ received Dr. Murphy's Encounter Summary which neither gave the date of the source opinion nor reiterated the Claimant's restriction to lie down or prop his leg frequently.  Consequently, the record reflects that, at the hearing, the ALJ relied upon the proper documentation that was available to him, and his decision was swayed by the additional documentation that imposed lesser restrictions on the Claimant than the medical source opinion from an undetermined year.

Furthermore, the ALJ addressed all possible scenarios based on Dr. Murphy's medical source opinion and Dr. Lockette's medical reports.  Some of these restrictions included no work around hazardous moving machinery; no work at heights; no work requiring climbing of ropes, ladders, and scaffolding; no work involving exposure to extreme noise or requiring him to respond to radio calls due to hearing loss.  Accordingly, the VE testified to many jobs available to the Claimant in both medium and light level exertion and even stated that if the medical source opinion was properly supplemented, then the Claimant would be precluded from all gainful work activity.  However, Dr. Murphy's subsequent opinion omitted the lying down restrictions contained in the medical source opinion, thus contradicting the disabling restriction placed on Claimant.

Because the Claimant has the initial burden to supply medical records that reflect his disabilities, the Claimant in this case did not meet his burden; the additional documentation from Dr. Murphy neither adequately supplemented the original document nor did it impose the same restrictions upon the Claimant.  In fact, the Encounter Summary imposed lesser restrictions than the earlier-submitted medical source opinion.  In conclusion, this court notes that the ALJ properly used the evidence before him to construct the Claimant's RFC and even included the VE's testimony to include all possible scenarios in case the Claimant properly supplemented Dr. Murphy's medical source opinion.

### VII. Conclusion

Upon review of the administrative record, and considering all of Claimant's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Therefore, the Commissioner's decision is due to be AFFIRMED.  The court will enter a separate order consistent with this memorandum opinion

DATED this 24th day of June 2008.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE